IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCARLETT LOPEZ,

       Plaintiff,

v.                                   Case No.: 8:23-cv-02548-KKM-LSG

CITY OF TAMPA,

       Defendant.
_____/

## DECLARATION OF REBECCA CARR

1. My name is Rebecca Carr. I am over the age of 18 years old, and I verify under 28 U.S.C § 1746 that the facts set forth in this Declaration are true and correct and are made under the penalty of perjury.

2. I am employed by the City of Tampa ("the City") as the Employee Relations Specialist Supervisor in Human Resources. I have worked in this capacity since February 2023. Prior to that, I worked as an Employee Relations Specialist beginning in July 2019.

3. As the Employee Relations Specialist Supervisor, my team is responsible for providing advice and guidance to City departments regarding employment related questions, interpretation of contracts, interpretation of personnel manual, interpretation of Civil Service Rules and Regulations, employee discipline, and the grievance process.

1

4. I have personal knowledge of Scarlett Lopez's lawsuit, and I have been thoroughly involved in the proceedings.

5. On April 19, 2022, Lopez presented Human Resources with a verbal complaint. Specifically, Lopez alleged that the incidents surrounding her temporary assignment were harassment, bullying, and retaliation. She believed that they were due to her health condition and FMLA-related leave (pregnancy).

6. Upon receiving her complaint, I immediately investigated her claims.

7. The next day, on April 20, Lopez filed a grievance regarding her performance evaluation. Specifically, Lopez requested that her evaluation be redone and regraded by Duncan as she accused Bertha Mitchell of completing her evaluation. She also complained that her evaluation covered a period of time when Danni Jorgenson served as her immediate supervisor, and not Jean Duncan.

8. Lopez's verbal complaint and her grievance were two separate processes. Each were treated differently and each involved separate procedures.

9. After speaking with Lopez about her verbal complaint, I spoke to a few witnesses, including Jean Duncan, Infrastructure and Mobility Administrator, and Mike Swain, Employment Services Manager.

10. During my conversation with Duncan, she explained that she started having issues with Lopez's performance beginning in or about March 2021. In fact, she informed me that she had previously spoken to Swain back in September 2021, before the budget process, about replacing Lopez as her Senior Executive Aide. Rather than terminate her employment, Duncan stated she wanted to give Lopez an opportunity to look for another position within the City.

11. Shortly after my conversation with Duncan, I spoke to Swain. He confirmed that Duncan had spoken with him back in September 2021 about wanting to move Lopez to another position. Swain told me that he reminded Duncan that the Civil Service Rules require candidates to apply for and be selected for the position. He informed Duncan that she could not simply move her to another classified position without application and selection.

12. In November 2021, I was informed that Duncan had a second conversation with Swain about reclassifying a vacant Customer Service position within the Parking Division to an Administrative Support Technician Position within the Transportation Engineering Division. She informed Swain that the Transportation Engineering Division needed some additional support and believed this was potentially a good opportunity for Lopez.

3

13. In late 2021, I learned that Lopez made a request to work from home for thirty days due to a back injury that she allegedly sustained while moving into her boyfriend's house. Duncan approved her request.

14. After the thirty days, I was informed that Lopez made a second request to continue working from home for an additional thirty days. Since Duncan did not believe that she had the authority to approve such a lengthy request, she made sure to get Human Resources involved.

15. As part of that process, I was informed that Human Resources sent Lopez FMLA paperwork on or about November 30, 2021. Per my conversation with Caterial Carver, Leave Administration Specialist, Lopez did not complete and/or turn in the certification necessary to support her FMLA request. Rather, Lopez agreed to continue working remotely during the next thirty days. Lopez returned to work on January 3, 2022.

16. While Lopez was working remotely, she needed to meet the duties and responsibilities of her position.

17. After she returned on January 3, 2022, Lopez did not request any accommodations relating to her back. Nor did she inform the City of any limitations that prevented her from completing the duties and responsibilities of her position(s) due to her back injury.

18. Moreover, other than her FMLA leave that she took beginning on January 12, 2022, due to her pregnancy and/or pregnancy related medical conditions, Lopez did not request any type of accommodations to perform the duties and responsibilities of her position. In fact, after Lopez unfortunately had a miscarriage on or about March 22 2022, she did not report any limitations associated with that pregnancy and/or request any additional leave.

19. In or about January 2022, I was informed that Duncan moved Lopez, to a temporary position. As stated above, it was Duncan's desire to replace Lopez as her Senior Executive Aide because of her work performance, but she still wanted to give Lopez the opportunity to apply for other positions in lieu of just terminating her employment.

20. While Lopez was working in the temporary position, she was instructed to report to Danni Jorgenson, Chief Transportation Planning Engineer.

21. At the time that Lopez was informed of the temporary position, she was informed that Duncan was actively seeking her replacement and that she was encouraged to apply for other positions. This conversation was subsequently confirmed in an email that Duncan sent to Lopez on January 3, 2022.

22. Despite being instructed to apply for other positions, Lopez did not apply for a single position until she applied for the Administrative Utility Technician position on May 15, 2022 - approximately 5 months later.

23. Although Lopez has claimed during the course of this lawsuit that she believed that she would be returning to her Senior Executive position following her temporary assignment in the Transportation Engineering Division, her own text messages certainly contradict that position.

24. During the course of discovery, Lopez produced text messages to the City between her and Phillis Ho-Zuhars, Senior Executive Aide to Chief of Staff John Bennett. Attached as Exhibit A is a true and correct copy of some of the texts that were exchanged between Lopez and Ho-Zuhars.

25. In one of the text messages, Lopez was very candid about her assignment and stated that she was technically still considered Duncan's aide "[u]ntil [Duncan] hires a new person." She then goes on to state that "[o]nce [Duncan] gets a new aide [Lopez] [will be] in limbo with this new position. They're going to post it and [Lopez] ha[s] no guarantee of getting it."

26. Lopez then tells Ms. Ho-Zuhars that if she does "do the leave of absence" then she "need[s] to do it before [Duncan] finds a new position. Because then guess what? She can't fill the position until [Lopez] come[s] back. And [Mitchell] can keep doing both positions."

27. Ms. Ho-Zuhars also asked Lopez about another position in the Payroll Department. Lopez stated that her friend tried but Mike Swain said, no. Upon reading this text exchange, it confirms that Lopez understood in January

6

2022, that she could not just be moved into a classified position in accordance with Civil Service Rules.

28. After Lopez applied for the Utility Administrative Support Technician position, I learned in August 2022, that the Transportation Engineering Department selected JoeyLee Stebbins for the position. She was the panel's number one selection and performed very well during her interview.

29. Since Lopez was temporarily working in the Utility Administrative Support Technician position, the City could no longer continue to employ Lopez in her current capacity in accordance with Civil Service Rules. The purpose of her temporary position was to give Lopez the opportunity to apply for the Utility Administrative Support Technician position, along with any other positions that she may have been interested in. Since the Transportation Engineering Department hired Stebbins, who was scheduled to start on September 6, 2022, the City moved forward with Lopez's termination.

30. Upon Lopez being notified of her termination, I was responsible for escorting her off the premises, which is consistent with City practice.

31. Following her separation, I have subsequently learned that Lopez has applied for several positions at the City. In my role as Employee Relations Specialist Supervisor, I have recently investigated the status of those applications and address each of them below.

32. Each application process may be different depending on the position, the number of applicants, and the hiring authority.

33. On April 25, 2023, Lopez applied for the Personnel Assistant I position. She was interviewed for the position by Jennifer Garrett, HR Supervisor. Based on her phone interview, Lopez was not selected as a final candidate for the position. I was informed that during the interview, Lopez's responses were brief and that she failed to provide any supporting details to showcase her experience or knowledge for the position. Rather, the City selected Lucretia Miller, female, based on her interview process and her experience while working for BayCare – an employer of more than 8,000 employees.

34. On May 16, 2023, Lopez applied for an Executive Aide position. Lopez was not selected for an interview since she did not have the same level of experience as the other applicants. The panel selected Brittany Bridgman, female, for the position. Ms. Bridgman served as an Executive Assistant for the Supervisor of Elections, Chief of Staff and Chief Communications Officer for 4.5 years and Senior Legal Assistant to Office of Attorney General for 5.3 years.

35. On May 28, 2024, Lopez applied for a Personnel Assistant I position. However, Lopez failed to timely submit her application before the deadline. Therefore, the City marked her application as inactive, thereby making her ineligible for the position.

36. On September 6, 2024, Lopez applied for an Accounting Technician 1 position. She was interviewed for the position on October 28, 2024. However, the City selected Jack McKnight for the position based on his experience, including his familiarity with a system commonly used in the Department – Oracle.

37. On September 6, 2024, Lopez applied for a Cemetery Coordinator position. Lopez did not meet the minimum qualifications for the position, thereby causing the City to mark her application as "Inactive/Not Qualified."

38. On September 6, 2025, Lopez applied for a CRA Economic Development Specialist II position. The application required Lopez to complete supplemental questions, including whether she had at least 5 years' experience in the necessary field. Since Lopez did not meet that requirement, Lopez was then sent another questionnaire to give her an opportunity to disclose any other experience that may not have been reflected in her application. Lopez chose not to return that form and therefore was not considered for the position.

39. The facts in this declaration are based on my personal knowledge and I would be able to testify about them. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of January 2025

_____
Rebecca Carr

10