Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 1 of 29 PageID
3143
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 1 of 29 PageID 2

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT FLORIDA**
**TAMPA DIVISION**

**SCARLETT LOPEZ**

    **Plaintiff,**

                                      **CASE NO._____**

**vs.**

**CITY OF TAMPA**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW,** Plaintiff, Scarlett Lopez (hereinafter "Plaintiff"), by and through her undersigned counsel hereby files this action against the above-named Defendant, City of Tampa (hereinafter "Defendant" or "City"), and alleges as follows:

## NATURE OF THE ACTION

1. This action is brought to seek declaratory, injunctive, equitable relief, costs, and attorney's fees for the injuries to Plaintiff as a result of the actions by Defendant in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., the Family Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601 et seq., the Pregnancy Discrimination Act of 1978, as amended ("PDA"), 42 U.S.C. § 2000, and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.10 et seq. arising from the termination of Plaintiff's employment as Jean Duncan's Senior Executive Aide/Transportation Administrative Support for the City of Tampa on August 22, 2022.

1



Exhibit 13
Jorgenson
Date 5/23/24

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 2 of 29 PageID
3144
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 2 of 29 PageID 3

## THE PARTIES

*The Plaintiff*

2. Plaintiff Scarlett Lopez is a resident of Tampa, Florida. Plaintiff began her employment with the City of Tampa on October 8, 2018.

3. Plaintiff started a new position within the City of Tampa at 306 E. Jackson Street, Tampa, FL 33602 as Senior Executive Aide on April 20, 2020.

4. Ms. Lopez was employed as Jean Duncan's Senior Executive Aide for Defendant.

5. Ms. Lopez was an employee of Defendant, and she worked at least 1,250 hours in the 12 months preceding her request for leave under FMLA.

6. Thus, Plaintiff was an "eligible employee" within the meaning of FMLA, 29 U.S.C. § 2611 (2).

7. As Jean Duncan's Senior Executive Aide, Plaintiff was terminated on August 22, 2022, as part of a retaliatory agenda by the City through Vik Bhide, Jean Duncan, and Bertha Mitchell due to her disability of Radiculopathy, her approved FMLA leave, her pregnancy-related condition of Hyperemesis Gravidarum, and her grievance filed with the City against the Department for their discriminatory/retaliatory actions against her.

*The Defendant*

8. Defendant, the City of Tampa,  is a Florida governmental entity in Hillsborough County, Florida, with its principal office located in Tampa, Florida.

9. Defendant is an employer as defined by 29 U.S.C. § 203(d) and 207(a)(1) and within the meaning of FMLA, 29 U.S.C. § 2611 (2).

10. Defendant employed fifteen (15) or more employees for each working day of twenty (20) or more calendar weeks in the current or preceding calendar year.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 3 of 29 PageID
3145
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 3 of 29 PageID 4

## JURISDICTION AND VENUE

11. This is an action for damages and declaratory relief by Plaintiff against her former employer for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*, Family Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Pregnancy Discrimination Act of 1978, as amended ("PDA"), 42 U.S.C. § 2000, and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.10 *et seq.*

12. This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331.

13. The exercise of supplemental jurisdiction over Plaintiff's state law claims is appropriate under 28 U.S.C. § 1367.

14. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b), and is proper, pursuant to Rule 1.02(c) of the Local Rules of the Middle District of Florida, as all the events giving rise to these claims occurred in Hillsborough County, Florida.

15. At all times hereto, Plaintiff has resided in Hillsborough County, Florida, and was employed in Hillsborough County, Florida.

16. At all times hereto, Defendant, a government entity, operates in Hillsborough County, Florida.

## CONDITIONS PRECEDENT

17. All conditions precedent to bringing this action have occurred.

18. On or about October 31, 2022, Plaintiff Scarlet Lopez filed a timely Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 511-2023-00364) against Defendant, City of Tampa, alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101KE *et seq.,* and Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 *et seq.*

19. On or about March 1, 2023, Plaintiff Scarlett Lopez filed an amended charge with the EEOC against Defendant, City of Tampa, adding pregnancy discrimination and retaliation in violation of the federal Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.,* Title VII of the Civil Rights Act of 1964 (Title VII), § 2000a *et seq.,* amended through the Pregnancy and Discrimination Act ("PDA"), 42 U.S.C. § 2000, and Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 *et seq.*

20. More than 180 days have passed since the filing of the Charge.

21. On September 21, 2023, the EEOC issued a Right to Sue to Plaintiff Scarlett Lopez.

22. Pursuant to 42 U.S.C § 2000e–5 *et seq.,* Plaintiff has exhausted all administrative action for purposes of filing this civil action under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964 (Title VII), § 2000a et seq. amended through the Pregnancy and Discrimination Act ("PDA"), 42 U.S.C. § 2000, and Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 *et seq.*

## FACTUAL BACKGROUND

*Ms. Lopez Had An Exemplary Record Of Employment.*

23. Plaintiff Scarlett Lopez brings this action against Defendant, the City of Tampa, and alleges that the City of Tampa discriminated against her due to her disability/handicap and has been retaliated against for filing a grievance and complaining of this discrimination.

24. Plaintiff has also been discriminated against based on her pregnancy-related condition and for taking her approved leave of absence, pursuant to the Family and Medical Leave Act.

25. Plaintiff was hired by the City of Tampa on October 8, 2018, as a Human Resources Department Personnel Assistant I, under Assistant Supervisor Antonietta Drigo.

26. Ms. Lopez received an excellent performance evaluation while working under Ms. Drigo from October 8, 2018, to April 8, 2019, as an H.R. Personnel Assistant I.

27. Ms. Lopez received an outstanding (5) for following instructions and "*asking questions about historical corrections and other tasks so that she fully understands and is able to complete them accurately.*"

28. Ms. Lopez received an outstanding (5) in reasoning and problem-solving as well as interpersonal skills for "*continually striving to understand all aspects of the payroll*" and following up with her supervisor, team lead, and/or co-workers if she has any questions. "*She [was] always courteous and willing to assist both internal and external customers.*"

29. Ms. Lopez had no disciplinary history during her probationary period.

30. Ms. Lopez was promoted in November 2019 to the Revenue & Finance Department as Payroll Technician I, reporting to Terrie Williams.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 6 of 29 PageID
3148
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 6 of 29 PageID 7

31. Ms. Lopez never received a performance evaluation while working under Ms. Williams in 2019 as a Payroll Technician as she changed positions on or about April 2020.

32. On or about April 2020, Plaintiff was approached by Bertha Mitchell, the Customer Experience Supervisor of Mobility, and offered the position of Senior Executive Aide to Ms. Jean Duncan, Administrator of Infrastructure and Mobility.

33. On or about April 20, 2020, Ms. Lopez began her new position as Jean Duncan's Senior Executive Aide.

34. As part of her duties, Ms. Lopez monitored emails, sat on difficult client calls, and kept and recorded data in advanced software programs for Ms. Duncan, among other more high-profile duties.

35. Ms. Lopez's duties mostly required her to work from a desk and a computer.

36. In order to perform these duties, Ms. Lopez needed to be knowledgeable of various software programs, use good listening skills to record data and information, proofread reports, and support her coworkers in the Office of Infrastructure and Mobility.

37. During Plaintiff's first year of employment as Senior Executive Aide with the City of Tampa, Ms. Duncan constantly praised Plaintiff's professionalism and work product.

38. On February 25, 2021, Ms. Duncan provided Ms. Lopez with a Yearly performance review, which gave Ms. Lopez an outstanding (5) in every category for the period of April 19, 2020, to April 19, 2021, and was told she would receive a pay raise.

39. Ms. Duncan particularly praised Ms. Lopez's reliable, responsive, and proactive conduct, making her a wonderful "*face of the City of Tampa.*"

40. Ms. Duncan called Ms. Lopez an exemplary role model to her peers for her pleasant and professional attitude and ability to collaborate with her colleagues.

41. Ms. Duncan praised Ms. Lopez's superb verbal communication skills, report production, and proofreading skills, resulting in polished work.

42. Ms. Lopez had no disciplinary history.

43. Ms. Duncan often glorified Ms. Lopez's punctuality and use of lunch breaks to continue working to ensure a seamless workflow.

44. On April 19, 2021, Ms. Lopez received a 31% increase and began making $29.75 per hour, or an annual salary of 61,880.00 USD.

45. On September 14, 2021, Ms. Duncan was elated that Ms. Lopez had volunteered to talk to Spanish media at the Fix it Fast press conference, which aired on ABC Action News, and praised her via text, saying, "*Scarlett did an amazing interview, and Bertha will make sure FIF is a success!!!*"

46. On September 20, 2021, Ms. Lopez received an additional increase of 3% and began making $30.64 per hour or an annual salary of 63,731.2 USD.

*Ms. Lopez Was Granted A Reasonable Accommodation Due to Her Disability Radiculopathy*

47. Since Sunday, October 9, 2021, Ms. Lopez had been in extreme pain due to her back condition, so she was approved a reasonable accommodation to begin working from home on Monday, October 10, 2021.

48. Ms. Lopez's Radiculopathy constitutes a disability under 42 U.S.C. §§ 12101 *et. seq.* and Fla. Stat. 760.10.

49. Ms. Lopez's Radiculopathy in her lumbar (lower back) region, as a result of major stress fractures (small cracks in the bone) on two of her vertebrae, has caused her extreme pain, especially when she is too sedentary for any extended length of time, including not being able to sit or stand for an extended amount of time because of the pain along her

vertebrae (*neurological/circulatory*), which in turn affected her ability to work in an office setting.

50. On or about October 13, 2021, Plaintiff Scarlett Lopez made Ms. Duncan aware that she was experiencing extreme back pain via text message. Ms. Duncan recommended Ms. Lopez see a specialist for her back pain after working several days from home.

51. On or about October 14, 2021, her medical provider advised her to continue working from home and sent her to receive an MRI.

52. On October 19, 2021, Ms. Lopez had an MRI and scheduled an appointment for October 21, 2021, to review the results with her physician.

53. On October 21, 2021, Plaintiff Scarlett Lopez was diagnosed with severe Radiculopathy due to stress fractures and several bulging discs on her back.

54. On October 21, 2021, Ms. Lopez advised the City and Ms. Duncan of her medical diagnosis and sent Ms. Duncan pictures of her doctor's note requesting a reasonable accommodation due to her disability.

55. Ms. Lopez requested to work from home for another four (4) weeks until her follow-up appointment due to her need for *"frequent positioning while sitting."*

56. On or about November 22, 2021, Ms. Lopez sent Ms. Duncan a reminder of her follow-up appointment on November 30, 2021.

57. On or about November 30, 2021, Plaintiff Scarlett Lopez informed Ms. Duncan that her provider requested an additional month of reasonable accommodation to work from home starting December 1, 2021, until December 31, 2021.

58. The following day, on December 1, 2021, Ms. Lopez spoke with Ms. Duncan over the phone, and Ms. Duncan stated that she would be "*ok*" with her request for accommodation as long as Human Resources (HR) approved of it.

Ms. Lopez sent the City through Ms. Duncan a request for accommodation, which Ms. Duncan approved and forwarded to Human Resources.

59. On or about December 3, 2021, Human Resources approved Ms. Lopez's disability-related accommodation to work from home

60. , and Ms. Lopez's return to the office was scheduled for January 3, 2022.

61. Ms. Lopez became pregnant in December 2021.

62. From April 19, 2021, to January 2, 2022, not once did Ms. Lopez receive any performance concerns from Ms. Duncan, and, in fact, even while working from home, she received high praise from Ms. Duncan.

*Ms. Lopez Was Retaliated by Being Placed in A Temporary Position To Ultimately Be Terminated due to her Disabilities.*

63. On or about December 30, 2021, Plaintiff Scarlett Lopez received an email from Director Vik Bhide, letting her know that she was being temporarily reassigned to assist the Transportation Department and to meet with him on Monday, January 3, 2022.

64. On her first day back at the office on or about Monday, January 3, 2022, Ms. Lopez met with Director Bhide and Ms. Bertha Mitchell, who informed Ms. Lopez of her temporary reassignment to the newly created position called *Transportation Administrative Support*.

65. Mr. Bhide assured Plaintiff that the transfer would be *temporary* and that neither her pay nor her schedule would change.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 10 of 29 PageID
3152
Case 8:23-cv-02548-KKM-JSS   Document 2   Filed 11/08/23   Page 10 of 29 PageID 11

66. After the meeting, Ms. Duncan advised Ms. Lopez that she was actively looking for her replacement, leading our client to believe that her reassignment was not, in fact, temporary as the Director had promised.

67. Ms. Duncan related to Plaintiff that she was placed in the Transportation Administrative Support position because she had been out of the office for *"too long,"* and she wanted a *"fresh start."*

*Ms. Lopez Was Approved For Intermittent Family And Medical Leave Due to Her High-Risk Pregnancy.*

68. On January 3, 2022, Ms. Lopez began reporting to Ms. Danni Jorgenson, Transportation Engineering Manager.

69. On or about January 5, 2022, Ms. Lopez informed Ms. Jorgenson that she was pregnant via text message advising Ms. Jorgenson that the OBGYN told her to come to the hospital.

70. Since Ms. Lopez began reporting to Ms. Jorgenson, she was admitted to the hospital multiple times, namely from January 6, 2022, to January 7, 2022, January 12, 2022, to January 13, 2022, and January 15, 2022, to January 17, 2022.

71. Ms. Lopez took time off from January 19, 2022, to January 21, 2022, to see her doctor instead of going to the hospital.

72. Ms. Lopez filed her Family and Medical Leave (FMLA) request on January 24, 2022, which requested intermittent leave from January 24, 2022, to March 4, 2022, due to her extremely high-risk pregnancy and pregnancy-related condition of Hyperemesis Gravidarum.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 11 of 29 PageID
3153
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 11 of 29 PageID 12

73. Since becoming pregnant, Ms. Lopez began to experience Hyperemesis Gravidarum, an extreme case of morning sickness, resulting in dehydration due to constant vomiting and nausea.

74. Ms. Lopez's Hyperemesis Gravidarum caused her physical ailments, including being unable to hold down any food/liquids (digestive), having to make multiple trips to the bathroom (bowel and bladder) both at home and work, and being constantly nauseated (digestive) and/or in pain.

75. Ms. Lopez's physical ailments affected her ability to carry her unborn child into a full-term pregnancy, which ultimately resulted in a miscarriage.

*Return to Work Following Her FMLA Leave*

76. Ms. Lopez returned to work on Monday, March 7, 2022, and the City agreed to allow her to continue to use her intermittent leave should she need it.

77. Ms. Lopez was not given the opportunity to resume her prior role as Senior Executive Assistant to Ms. Duncan or given the opportunity to apply for the position but instead was made aware that a new hire was placed in the position of Senior Executive Aide to Ms. Duncan.

78. On March 7, 2022, Ms. Duncan directed Ms. Mitchell to pick up Ms. Lopez's laptop and phone, however, she did not do so.

79. On March 9, 2022, Ms. Duncan directed Ms. Jorgenson to recover Ms. Lopez's parking pass from her since she would not be returning to that position, as she had been replaced by Sheila DelCastillo. Ms. Lopez's last day of parking was on March 18, 2022, as the parking permit ended on March 19, 2022.

80. Ms. DelCastillo's official start date was Monday, March 21, 2023.

11

81. Ms. Duncan asked Ms. Lopez to turn in her parking pass, which our client explained that she needed it due to her pregnancy being extremely high-risk, and without it, the walk could exacerbate her condition or her symptoms.

82. Ms. Duncan did not believe our client was pregnant or had any medical conditions and demanded the parking pass without considering her request to maintain it due to her pregnancy-related condition.

83. Only five days after she received notice that her permanent position was given to Ms. DelCastillo, on March 25th, Ms. Lopez was hospitalized after being advised she lost her unborn child on Thursday, March 24th, while working with the City.

84. Ms. Lopez, in fear of further retaliation and poor treatment, returned from her pregnancy-related FMLA leave on Tuesday, March 29, 2022, only four (4) days after the loss of her child.

*Ms. Duncan's Retaliatory Agenda Continued by Producing a False Performance Review of Ms. Lopez.*

85. On or about April 11, 2022, less than two weeks after returning from her FMLA Leave, Ms. Lopez received a Senior Executive Aide performance evaluation from Ms. Duncan for the period of April 19, 2021, to April 20, 2022.

86. Ms. Lopez began reporting directly to Ms. Jorgenson on January 3, 2022, and resumed her temporary role in the Transportation Department under Ms. Jorgenson upon her return on March 29, 2022.

87. Ms. Duncan gave Ms. Lopez a below expectations (2) for the recording data/information category due to a request to record City Council Motions and supporting material for each Infrastructure and Mobility Department not being completed as well as in the

Case 8:23-cv-02548-KKM-LSG     Document 53-14     Filed 01/17/25     Page 13 of 29 PageID
3155
Case 8:23-cv-02548-KKM-JSS   Document 2   Filed 11/08/23   Page 13 of 29 PageID 14

following instructions category wherein Ms. Lopez was provided with several high profile executive items to track and the Administrator was not provided with regular updates or final findings and recommendations.

88. Ms. Duncan also gave Ms. Lopez a below expectations (2) in the reasoning and problem-solving category for not taking the initiative to engage with others regarding status or next steps, as well as a for the communication skills category for being withdrawn and rarely engaging with the Administrator during most of the evaluation period, including when working from home.

89. Ms. Duncan gave Ms. Lopez below expectations (2) in the categories of attitude toward supervision and disciplinary history for being distracted and using her phone while at work, with little improvement after several verbal warnings.

90. Ms. Duncan gave Ms. Lopez a poor (1) in interpersonal skills for seeming disinterested and distracted in her job as well as in her attitude toward the job category for often remaining in her office and rarely providing the Administrator with updates independently, forcing the Administrator to rely on Ms. Bertha Mitchell, the Infrastructure and Mobility Customer Experience Supervisor.

91. Ms. Duncan gave Ms. Lopez a below expectations (2) for her use of leave, wherein there is excessive tardiness/use of sick leave, thereby affecting her unit productivity despite Ms. Lopez being on approved FMLA leave.

92. On or about Wednesday, April 13, 2022, Ms. Lopez returned a call from Ms. Duncan's Aide, Ms. Sheila DelCastillo, to let her know that she had received the evaluation and was in the process of responding to the review and speaking with Human Resources.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 14 of 29 PageID
3156
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 14 of 29 PageID 15

93. Ms. Lopez received a *Position Transaction* meeting invitation from Human Resources, Ms. Rebecca Carr, and Ms. Jorgenson, but the meeting was never held.

94. Ms. Jorgenson then later related to Ms. Lopez that she met with Human Resources separately and agreed to post a permanent position of *Utility Administrative Support Technician* internally to give Ms. Lopez the opportunity to apply.

95. Ms. Jorgensen encouraged Ms. Lopez to apply for the Utility Administrative Support Technician position despite a decrease in salary.

*Ms. Lopez Filed A Protected Grievance Against Ms. Duncan.*

96. As a result of the false and contrived poor performance review by Ms. Duncan, Ms. Lopez filed a protected complaint with the Human Resources department on April 19, 2022, and the next day, submitted a Non-Bargaining Grievance Form on April 20, 2022.

97. Ms. Lopez explained in a letter dated April 19, 2022, that "*before the review was received…I disclosed not one but two pretty disabling conditions, one being my painful back condition and the other being a pregnancy-related condition, which made it extremely difficult to be at work…which makes this review look to be motivated by unlawful, discriminatory, and retaliatory animus…The negative review also seems to be in retaliation due to my absences that were covered under FMLA and work from home.*"

98. In Attachment I, Ms. Lopez further states that "*this talk of positions is almost being dangled in my face like a carrot. This is not what a "reassignment" is, being that I have to apply for a position that I am supposedly being reassigned to….Jean has already "reassigned" me or, as I see it, moved me out of the way so that she may hire someone else…to take my place*" as Ms. Duncan's intent was to terminate her.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 15 of 29 PageID
3157
Case 8:23-cv-02548-KKM-JSS   Document 2   Filed 11/08/23   Page 15 of 29 PageID 16

99. Ms. Lopez related in her complaint that Ms. Duncan directed Ms. Mitchell, the Customer Experience Supervisor, to complete Ms. Lopez's performance evaluation, to whom Ms. Lopez has never reported.

100.    Ms. Lopez also related that she was reassigned by Ms. Duncan to a different department and directed not to report directly to Ms. Duncan but rather to Ms. Jorgenson, beginning January 3, 2022, when she returned from her back disability-related leave and work-from-home accommodation and notified her employer of her pregnancy-related disability.

101.    Ms. Duncan did not request any feedback from Ms. Jorgenson to complete Ms. Lopez's performance evaluation despite Ms. Lopez reporting to Ms. Jorgenson since January 3, 2022.

102.    Ms. Lopez never received any verbal or written warnings from Ms. Duncan in regard to her performance, nor any sort of negative feedback.

103.    Immediately after Plaintiff filed the grievance against Ms. Duncan, Ms. Jorgenson was approached by Jean Duncan, who requested the immediate termination of Ms. Lopez and stated the Utility Administrative Support Technician Position needed to be posted externally as she would ensure that Ms. Lopez be terminated.

104.    Ms. Jorgenson requested that she be removed from the hiring panel once the position is posted externally.

105.    On May 15, 2022, Ms. Lopez applied for the Utility Administrative Support Technician Role.

106.    On May 24, 2022, Ms. Lopez sent Human Resources Specialist Rebecca Carr a letter requesting an update on her formal complaint against Ms. Duncan's evaluation and that

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 16 of 29 PageID
3158
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 16 of 29 PageID 17

the retaliation against her for requesting reasonable accommodations and taking protected
FMLA leave be stopped.

107.    On or about June 2, 2022, Ms. Duncan conducted a Step 2 hearing to review the
complaint, Non-Bargaining Grievance Form, and other documentation submitted
regarding Ms. Lopez's position on the poor performance review.

108.    Despite the complaint being against Ms. Duncan, it was she who conducted the
investigation with Ms. Carr and issued a decision.

109.    On June 8, 2022, Ms. Duncan wrote to Ms. Lopez that she found *"no violation of City
of Tampa policies and procedures"* and denied her grievance.

110.    On June 15, 2022, Ms. Carr wrote to Ms. Kimberly Sullivan, Employee Relations
Manager, closing the matter with a resounding *"There is no evidence that Ms. Lopez was
terminated from her Senior Executive Aide position for anything other than performance
issues, and not related to a protected condition or leave."*

111.    On or about July 8, 2022, Ms. Lopez received an interview date for the Utility
Administrative Support position.

112.    On or about July 14, 2022, Ms. Lopez attended an interview for the Utility
Administrative Support position, which she was already in on a temporary basis.

113.    Ms. Duncan and Mr. Bhide personally contacted each of the hiring panel members
and instructed them not to hire Ms. Lopez.

114.    On July 19, 2022, Ms. Lopez received an email stating that she had not been selected
for the position.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 17 of 29 PageID
3159
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 17 of 29 PageID 18

*Ms. Duncan Assures That Ms. Lopez is Terminated.*

115.    From the time Ms. Lopez filed a grievance, Ms. Jorgenson was approached by Ms. Duncan over ten (10) times via text, email, and in person, asking for an update on the termination of Ms. Lopez and requesting that her termination be expedited.

116.    On August 2, 2022, Ms. Jorgenson was approached by Ms. Carr and explicitly told to complete a neutral evaluation of Ms. Lopez's work performance from the range of January 3, 2022, to April 19, 2022.

117.    Ms. Carr told Ms. Jorgenson what to write in the performance review in order to provide a neutral evaluation, given that Ms. Lopez was out on protected leave the majority of the time.

118.    On August 3, 2022, Ms. Lopez received a letter from Ms. Sullivan regarding a Step 4 grievance hearing, which stated, *"As per procedure in Human Resources, Ms. Jorgenson will be instructed to complete an evaluation for January 3, 2022, to April 19, 2022... your grievance is granted in part."*

119.    On or about August 10, 2022, Ms. Lopez applied for another position as a Payroll Technician while employed with the City.

120.    Seven days later, on August 17, 2022, Ms. Lopez was informed by Veronica Lee, Payroll Supervisor, that Ms. Duncan approached the CFO, Mr. Dennis Rogero, and stated that she and Mr. Bhide wanted to make sure that Ms. Lopez not be selected for any positions within the City.

121.    Veronica Lee, Payroll Supervisor, sent Ms. Lopez a text saying: *" Me and Rosie were talking about this yesterday. I told her I don't believe that one evaluation is going to*

17

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 18 of 29 PageID
3160
Case 8:23-cv-02548-KKM-JSS   Document 2   Filed 11/08/23   Page 18 of 29 PageID 19

*damage her reputation. Me and Rosie have spoken highly of you. Jean has put a bug in Dennis' ear.*"

122.    Ms. Jorgenson was contacted again by Ms. Duncan, who requested Ms. Lopez be terminated right away, despite Ms. Jorgenson's recommendation that she be kept longer to train the new employee who would be replacing her in the Utility Administrative Support position.

123.    Two days later, on August 19, 2022, Ms. Lopez was informed that as she was not selected for the Utility Administrative Support position, her temporary position would be terminated, and her replacement would start on September 6, 2022.

124.    Despite Ms. Jorgenson's recommendation to keep Ms. Lopez to train her replacement, Ms. Duncan required that Ms. Lopez be terminated as soon as possible.

125.    Ms. Lopez was terminated on August 22, 2022.

126.    On August 31, 2022, Ms. Lopez received an email from Chief Accountant Mr. Lee Huffstutler that she made the candidate list for the Payroll Technician position.

*Ms. Duncan Thwarted Ms. Lopez's Ability to Obtain any Position with the City.*

127.    On September 1, 2022, Mr. Huffstutler sent Ms. Lopez an email with potential telephone interview dates for the Payroll Technician position.

128.    On September 2, 2022, Mr. Huffstutler interviewed Ms. Lopez.

129.    On September 6, 2022, Ms. Lopez received an email from Mr. Huffstutler stating he had completed phone interviews with ten candidates and was now working with the top five, of which she was one, and would arrange in-person interviews with the top three.

130.    On September 14, 2022, Ms. Lopez reached out to Mr. Huffstutler to inquire about the position and confirm her interest.

131.    On September 22, 2022, Mr. Huffstutler replied to her email that he was talking with the CFO, Mr. Rogero, about her candidacy but that *"it may not happen due to her recent performance evaluation."* Ms. Lopez asked him to verify that he and the CFO, Mr. Rogero, reviewed the proper performance evaluation, as her last performance review was subject to a grievance and amended.

132.    On October 6, 2022, Ms. Lopez followed up with Mr. Huffstutler, who stated that he was working with the top candidate, meaning she was no longer a candidate.

## CLAIMS FOR RELIEF

## COUNT I
## AMERICANS WITH DISABILITIES ACT OF 1990
## 42 U.S.C. §§ 12101 ET. SEQ.

133.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through 132 above.

134.    Plaintiff was discriminated against and retaliated against due to her disabilities.

135.    Plaintiff suffered from two disabilities protected under the Act: Radiculopathy and Hyperemesis Gravidarum, as contained in Paragraphs 7, 47-49, 52, 59.

136.    Plaintiff can establish that she is disabled as she has physical impairments, including neurological/circulatory, digestive, bowel and bladder, and reproductive impairments, that substantially limit one or more major life activities contained in Paragraphs 45, 69, 71-73.

137.    Plaintiff can establish that she is a "qualified individual" as she could perform all essential functions of her job, including calling, editing, and other computer tasks, contained in Paragraphs 34-45, with reasonable accommodations, including a

work-from-home accommodation as granted by the City and FMLA Leave, as contained in Paragraphs 47, 49, 53-55, 56-58, 60, 69-70, 74, and 81-82.

138.    Plaintiff was discriminated against because of her disabilities by the City through the actions of Ms. Duncan and Mr. Vik Bhide, who created a hostile work environment, temporarily reassigned and then demoted Mr. Lopez, hired her replacement, and subsequently terminated her as contained in Paragraphs 7, 45, 47-49, 52, 59, 69, 71-73.

139.    Plaintiff engaged in a statutorily protected expression by filing a complaint regarding the poor performance evaluation written by Ms. Mitchell on the request of Ms. Duncan to Human Resources, filing a grievance against Ms. Duncan, and requesting periodic updates from Ms. Carr concerning her filed grievance as contained in Paragraphs 94-100, and 104.

140.    Plaintiff suffered an adverse employment action by having the terms and conditions of her employment changed and subsequently terminated as contained in Paragraphs 61-65, 75, 79-80, 83-89, 105-107, 111-112, 118-122, 129.

141.    The causal link between the discrimination and the adverse action of demotion and subsequent termination in retaliation of the Plaintiff's protected expression as contained in Paragraphs 101, 105-107, 111-112, 118-120, 122, 129.

142.    Plaintiff avers that Defendant's unlawful discriminatory and retaliatory termination of her employment on account of her opposition to Defendant's discriminatory practices and retaliation against herself for her non-pregnancy disability (Radiculopathy) and her pregnancy disability (Hyperemesis Gravidarum) violates the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

## COUNT II
## PREGNANCY DISCRIMINATION ACT (PDA) OF 1978
## 42 U.S.C. §§ 2000 ET SEQ

143.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through 132 above.

144.    Plaintiff became pregnant in December 2021 and developed a pregnancy-related medical condition, Hyperemesis Gravidarum, as a result of her high-risk pregnancy contained in Paragraphs 59, 67-73, 79-82.

145.    Defendant's termination of Plaintiff was driven by unlawful pregnancy and pregnancy-related disability discrimination and retaliation against Plaintiff contained in Paragraphs 79-83, 85-89, and 98.

146.    Defendant's termination of Plaintiff was driven by unlawful pregnancy and pregnancy-related disability discrimination and retaliation against Plaintiff "because of [her] sex," as contained in Paragraphs 79-83, 85-89, 98.

147.    Plaintiff avers that Defendant's unlawful discriminatory and retaliatory termination of her employment on account of her opposition to Defendant's discriminatory practices and retaliation against herself for her pregnancy disability (Hyperemesis Gravidarum) violates the  Pregnancy Discrimination Act of 1978, as amended ("PDA"), 42 U.S.C. § 2000 *et seq.*

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 22 of 29 PageID
3164
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 22 of 29 PageID 23

**COUNT III**
**FAMILY MEDICAL LEAVE ACT OF 1993**
**29 U.S.C. §§ 2601 ET SEQ**

148.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through
132 above.

149.    At all times material hereto, Plaintiff had been employed by Defendant, City of
Tampa, for at least twelve months contained in Paragraphs 25, 30, and 33 and had worked
at least 1,250 hours during the twelve-month period prior to the commencement of the
requested leave contained in Paragraphs 26, 31, and 38.

150.    Ms. Lopez was employed at a worksite where Defendant, the City of Tampa,
employed fifty (50) or more employees within seventy-five miles of that worksite
contained in Paragraphs 5, 6, 9, 10, and 16.

151.    Ms. Lopez was an eligible employee entitled to claim leave and enforce the FMLA,
as granted by the City and detailed in Paragraphs 70 and 74.

152.    As an eligible employee under the FMLA, Plaintiff Scarlet Lopez was entitled to a
total of twelve weeks of leave during any twelve-month period because of a serious
health condition suffered **by the employee herself** or a son, daughter, or spouse
contained in Paragraphs 2-6.

153.    In reprisal for Plaintiff's statutorily protected activity, Defendant, to include its
employees and other named and unnamed individuals, commenced a campaign of
retaliation against Ms. Lopez consisting of reassigning and replacing Ms. Lopez's
position, removing her parking pass privileges, contriving a negative performance
evaluation of Ms. Lopez, denying Ms. Lopez's grievance filed against Ms. Duncan for
taking into account her use of FMLA in her evaluation contained in Paragraphs 44-95.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 23 of 29 PageID
3165
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 23 of 29 PageID 24

154.   Ms. Duncan intentionally approached Ms. Jorgenson to request Ms. Lopez's termination several times, as well as Mr. Bhide to discourage him from selecting Ms. Lopez for several other positions with the City contained in Paragraphs 96-130.

155.   Plaintiff, Scarlett Lopez avers that Defendant's unlawful discriminatory and retaliatory termination of her employment on account of her opposition to Defendant's discriminatory practices and retaliation for her taking a protected FMLA leave due to her pregnancy disability (Hyperemesis Gravidarum) is in direct violation of the Family Medical Leave Act of 1993, 29 U.S.C § 2601 *et seq.*

156.   Under the FMLA, 29 U.S.C. § 2615(a) (2), an employer is prohibited from taking adverse employment action against an employee in retaliation for the exercise or attempt to exercise any right provided under the Act.

157.   In providing Defendant with adequate notice and a qualifying reason for requesting leave, Plaintiff exercised and/or attempted to exercise FMLA-protected rights and thus engaged in activity protected by the Act contained in Paragraphs 59, 67, 70, 74, and 81-82. Further, in taking FMLA-qualifying leave, Plaintiff exercised and/or attempted to exercise FMLA-protected rights and thus engaged in activity protected by the Act contained in Paragraphs 70, 74, and 81-82.

158.   Defendant(s), through its employees and/or agents, were aware of the Plaintiff's statutorily protected activity when it subjected the Plaintiff to the aforementioned retaliatory action contained in Paragraphs 64-65, 75-77, 79, 83, 94, 101, 107-108, 111, 113, 118-120, 129. The adverse actions taken against the Plaintiff were after the Plaintiff engaged in protected activity under the Act contained in Paragraphs 83, 94, 101, 107-108, 111, 113, 118-120, and 129.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 24 of 29 PageID
3166
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 24 of 29 PageID 25

159.    In taking adverse employment action against the Plaintiff for engaging in statutorily

protected activity, Defendant violated the FMLA.

**COUNT IV**
**FLORIDA CIVIL RIGHTS ACT OF 1992**
**ANTI DISCRIMINATION (GENDER/SEX) PROVISION FLA. STAT. 760.10 *et. seq.***

160.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through

132 above.

161.    Under the FCRA, Fla. Stat. § 760.10 et seq., it is an unlawful employment practice

for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise

to discriminate against any individual with respect to compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, **sex**,

pregnancy, national origin, age, handicap, or marital status.

162.    Plaintiff is a "qualified member of a protected class" as she is a female.

163.    Plaintiff was subjected to an adverse employment action in contrast to a similarly

situated employee outside the protected class (non-pregnant female/male). Plaintiff was

temporarily reassigned, demoted, replaced by Ms. DelCastillo (a non-pregnant female),

and subsequently terminated as contained in Paragraphs 7, 45, 47-49, 52, 59, 69, 71-73.

164.    Defendant's termination of Plaintiff was driven by unlawful gender/sex

discrimination and retaliation against Plaintiff in violation of Florida Civil Rights Act of

1992, Fla. Stat. § 760.10 *et seq*.

165.    Plaintiff avers that Defendant's unlawful discriminatory and retaliatory termination of

her employment on account of her gender/sex  violated the Florida Civil Rights Act of

1992, Fla. Stat. § 760.10 *et seq*.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 25 of 29 PageID
3167
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 25 of 29 PageID 26

**COUNT V**
**FLORIDA CIVIL RIGHTS ACT OF 1992**
**ANTI DISCRIMINATION (PREGNANCY) PROVISION FLA. STAT. 760.10 *et. seq.***

166.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through

132 above.

167.    Under the FCRA, Fla. Stat. § 760.10 *et seq*., it is an unlawful employment practice

for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise

to discriminate against any individual with respect to compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex,

**pregnancy**, national origin, age, handicap, or marital status.

168.    Plaintiff is a "qualified member of a protected class" as she underwent a high-risk

pregnancy during the course of her employment contained in Paragraphs 59, 67, 70-72,

81-82.

169.    Plaintiff was subjected to an adverse employment action in contrast to a similarly

situated employee outside the protected class (non-pregnant female). Plaintiff was

temporarily reassigned, demoted, replaced by Ms. DelCastillo (a non-pregnant female),

and subsequently terminated as contained in Paragraphs 7, 45, 47-49, 52, 59, 69, 71-73.

170.    Defendant's termination of Plaintiff was driven by unlawful pregnancy discrimination

and retaliation against Plaintiff in violation of Florida Civil Rights Act of 1992, Fla. Stat.

§ 760.10 *et seq*.

171.    Plaintiff avers that Defendant's unlawful discriminatory and retaliatory termination of

her employment on account of her high-risk pregnancy violated the Florida Civil Rights

Act of 1992, Fla. Stat. § 760.10 *et seq*.

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 26 of 29 PageID
3168
Case 8:23-cv-02548-KKM-JSS   Document 2   Filed 11/08/23   Page 26 of 29 PageID 27

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT OF 1992
## ANTI DISCRIMINATION (DISABILITY/HANDICAP)
## PROVISION FLA. STAT. 760.10 *et. seq.*

172.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through
132 above.

173.    Under the FCRA, Fla. Stat. § 760.10 *et seq.*, it is an unlawful employment practice
for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise
to discriminate against any individual with respect to compensation, terms, conditions, or
privileges of employment, because of such individual's race, color, religion, sex,
pregnancy, national origin, age, **handicap**, or marital status.

174.    Plaintiff is a "qualified member of a protected class" as she underwent a high-risk
pregnancy and suffered from a pregnancy-related handicap/disability (Hyperemesis
Gravidarum) during the course of her employment contained in Paragraphs 59, 67, 70-72,
81-82.

175.    Plaintiff was subjected to an adverse employment action in contrast to a similarly
situated employee outside the protected class (non-pregnant female). Plaintiff was
temporarily reassigned, demoted, replaced by Ms. DelCastillo (a non-pregnant female),
and subsequently terminated as contained in Paragraphs 7, 45, 47-49, 52, 59, 69, 71-73.

176.    Defendant's termination of Plaintiff was driven by unlawful disability/handicap
discrimination and retaliation against Plaintiff in violation of Florida Civil Rights Act of
1992, Fla. Stat. § 760.10 *et seq.*

177.    Plaintiff avers that Defendant's unlawful discriminatory and retaliatory termination of
her employment on account of her disability (Hyperemesis Gravidarum) violated the
Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq.*

26

Case 8:23-cv-02548-KKM-LSG    Document 53-14    Filed 01/17/25    Page 27 of 29 PageID
3169
Case 8:23-cv-02548-KKM-JSS    Document 2    Filed 11/08/23    Page 27 of 29 PageID 28

**COUNT VII**
**FLORIDA CIVIL RIGHTS ACT OF 1992**
**ANTI RETALIATION PROVISION FLA. STAT. 760.10(7)** *et. seq.*

178.    Plaintiff, re-adopts and realleges the allegations contained in Paragraphs 1 through

132 above.

179.    Under the FCRA, Fla. Stat. § 760.10 *et seq.*, it is an unlawful employment practice

for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise

to discriminate against any individual with respect to compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, **sex,**

**pregnancy,** national origin, age, **handicap,** or marital status.

180.    Plaintiff engaged in a statutorily protected expression by complaining of the poor

performance evaluation written by Ms. Mitchell at the request of Ms. Duncan to Human

Resources, filing a grievance against Ms. Duncan, and requesting periodic updates from

Ms. Carr concerning her filed grievance contained in Paragraphs 94-100, and 104.

181.    Plaintiff suffered an adverse employment action by having the terms and conditions

of her employment changed and subsequently terminated as contained in Paragraphs

61-65, 75, 79-80, 83-89, 105-107, 111-112, 118-122, 129.

182.    The causal link between the discrimination and the adverse action of demotion and

subsequent termination in retaliation of the Plaintiff's protected expression contained in

Paragraphs Defendant unlawfully retaliated against Plaintiff based upon her gender/sex,

pregnancy, and pregnancy-related disability/handicap as well as her complaints and

opposition to pregnancy and handicap/disability discrimination contained in Paragraphs

94-1101, 104-107, 111-112, 118-120, 122, 129.

183.    Plaintiff avers that Defendant's unlawful and discriminatory termination of his employment on account of her opposition to Defendant's discriminatory practices to discriminate and retaliate against herself as a pregnant female employee who is handicapped violates the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10(7).

## PRAYER OF RELIEF

**WHEREFORE**, Plaintiff hereby demands a trial by jury and a judgment against Defendant, as follows:

184.    For a money judgment representing all lost wages, benefits, front pay, and all other economic accouterments of her City of Tampa employment;

185.    For a money judgment representing all damages Plaintiff may avail herself of under the respective cause of action alleged as available;

186.    For a money judgment representing prejudgment interest;

187.    Compensatory damages;

188.    Punitive damages;

189.    Declaratory relief;

190.    Equitable relief;

191.    Injunctive relief;

192.    Pecuniary loss;

193.    That the court retain jurisdiction over this action until the Defendant has fully complied with the Orders of this Court and that the Court require the Defendant to file such reports as may be necessary to supervise such compliance;

194.    For the costs of suit, including an award of reasonable attorneys' fees; and

195.    For such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

**WHEREFORE**, Plaintiff hereby demands a trial of her claims by jury to the extent

authorized by law.

RESPECTFULLY SUBMITTED on November 8, 2023

By: /s/ Daniela Carrion
DANIELA CARRION
Florida Bar No.  125366
The Linesch Firm
700 Bee Pond Road
Palm Harbor, FL  34683
Voice: (727) 786-0000
Facsimile: (727) 786-0974
Attorney for Plaintiff